**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>662 BOXES OF EPHEDRINE, ET. AL.<br><br>                  Defendants. | Civ. No. 08-3326 (DRD)<br><br>**O P I N I O N** |
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>213 BOXES OF EPHEDRINE, ET. AL.<br><br>                  Defendants. | Civ. No. 08-3327 (DRD) |

*Appearances by:*

RALPH J. MARA, JR.
Acting United States Attorney
by: Jordan M. Anger, Esq.
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

    *Attorney for Plaintiff*

ROBINSON, WETTRE & MILLER, LLP
by: Keith J. Miller, Esq.
1 Newark Center, 19th Floor
Newark, NJ 07102

    *Attorneys for Claimants Kirk Pharmaceuticals, LLC*

DUANE MORRIS, LLP
by: Eric R. Breslin, Esq.
744 Broad Street, Suite 1200
Newark, NJ 07102

    *Attorneys for Claimants Lehigh Valley Technologies, Inc.*

**DEBEVOISE, Senior District Judge**

    The current motion poses the question whether certain counterclaims asserted by Claimants Lehigh Valley Technologies ("LVT") and Kirk Pharmaceuticals, LLC ("Kirk") in a civil forfeiture proceeding instituted by the United States must be dismissed. This court properly has jurisdiction over the action because it is a forfeiture proceeding instituted pursuant to federal law, and is the appropriate venue because the acts giving rise to the forfeiture occurred within the District of New Jersey and the defendant property resides therein. 28 U.S.C. § 1355(a),(b).

    Claimants argue that the seizure of the defendant property by the United States was wrongful, and on that basis assert counterclaims for damages pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(c), declaratory judgment under the under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), and attorneys' fees. Due to the common questions of

law and fact presented by both actions, the two proceedings will be consolidated. Because the Claimants' petitions for damages are statutorily barred by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2465(b)(2)(A), those counterclaims will be dismissed. Claimants' requests for declarative judgment will also be dismissed, as the underlying forfeiture action provides an adequate method of achieving the relief sought by those counterclaims. Similarly, the counterclaim for attorneys' fees and litigation costs will be dismissed as superfluous because the CAFRA specifically provides that a prevailing party may recover those expenses by post-judgment motion.

## I. BACKGROUND

This case involves a seizure on the part of the Drug Enforcement Administration ("DEA") of ephedrine, a chemical commonly used in over-the-counter decongestants. In recent years, ephedrine has been increasingly used to manufacture methamphetamine, commonly known as "meth," an illegal drug associated with elevated heart rates, frenetic bursts of energy and, in many cases, organ failure and death. In order to address the widespread use of meth, Congress passed the Combat Methamphetamine Epidemic Act of 2005 ("CMEA"), Pub. L. No. 109-177 §§ 711-756, which requires the Attorney General of the United States to determine the total amount of ephedrine needed for lawful purposes each year and apportion that amount between the various manufacturers of the drug through the establishment of yearly quotas. 21 U.S.C. § 826. Any ephedrine in excess of a manufacturer's individual quota is subject to civil forfeiture. 21 U.S.C. § 881(a).

Claimants are drug companies engaged in the production and distribution of ephedrine for the lawful purpose of manufacturing over-the-counter medications. Both companies employed an outside contractor, Blispak, Inc. ("Blispak") for the purpose of repackaging and

labeling the raw ephedrine before it was shipped to individual suppliers.  Claimaints retained title to the ephedrine while it was in the possession of Blispak, and Blispak asserts no claim to the defendant property.

On February 14, 2008, the Drug Enforcement Administration ("DEA") carried out an inspection of Blispak's facilities.  After finding ephedrine on the premises, the DEA determined that neither Blispak nor the Claimants possessed a quota allowing those companies to produce or possess the drug in 2008, and on that basis seized the defendant property and instituted the present forfeiture proceeding.

The counterclaims at issue in the Motion currently before the court are premised on the Claimants' assertions that (1) the United States did not mandate ephedrine production quotas for 2007, and (2) the quotas applicable to 2008 were promulgated in violation of federal regulations.  On the first point, Claimants argue that the United States waived the requirement that ephedrine manufacturers limit their production in 2007, stating that:

> In 2006, manufacturers of ephedrine … filed applications for 2007 individual manufacturing, procurement, and importation quotas.  The DEA never ruled on these requests.  Rather, the industry operated without quotas in 2006 and 2007.
>
> Midway through 2007, the DEA ultimately acknowledged that it would not implement the quota program for ephedrine … in 2007.

(Kirk Answer ¶¶ 25-26); (LVT Answer ¶¶ 28-29.)

With respect to 2008 production, the Claimants contend that the DEA failed to comply with the deadlines contained in 21 C.F.R. §§ 1315.11 and 1315.21 when issuing quotas for that year.  The first of those regulations requires the DEA to publish a "general notice of an assessment of annual needs for ephedrine" for the following year in the Federal Register "on or before May 1 of each year," and mail notice of that publication to each registered ephedrine manufacturer.

21 C.F.R. § 1315.11(c).  The second states that the DEA shall, "on or before July 1 of each year, fix for and issue to each person registered to manufacture in bulk ephedrine … who applies for a manufacturing quota an individual manufacturing quota authorizing that person to manufacture during the next calendar year a quantity of that chemical."  21 C.F.R. § 1315.21.  Claimants allege that "the DEA finalized its assessment of the annual needs needed to determine the 2008 individual manufacturing … quotas" on December 27, 2007, and "did not issue any individual ephedrine manufacturing … quotas for 2008 before the start of the 2008 calendar year."  (Kirk Answer ¶¶ 30-31); (LVT Answer ¶¶ 34-35.)  Thus, Claimants argue that the DEA's seizure of the defendant property was wrongful because no quota applied to the portion of the ephedrine produced in 2007, while the quota applicable to 2008 was promulgated in violation of the agency's own regulations and therefore void.

Based on their argument that the defendant property was wrongfully seized, Claimants assert counterclaims for damages, declaratory relief, and attorneys' fees.  Except for the names of the Claimant companies and amount of ephedrine at issue, the counterclaims are premised on identical allegations:

> As a direct and proximate result of the DEA's wrongful seizure of the [defendant property, Claimant] has sustained damages, monetary and otherwise, and [is] entitled to an award of damages in an amount to be determined against the United States pursuant to 28 U.S.C. § 2680(c).

> By deviating from its established practice [of not establishing and enforcing ephedrine production quotas], the DEA has acted arbitrarily and capriciously, abused its discretion, and acted in a fashion that is not in conformance with the law, and therefore has violated 5 U.S.C. § 706(2)(A).

> The United States' manipulation of the quota process by failing to timely act on ephedrine quota requests, and by failing to timely and fully discharge its obligations by establishing the mandated CMEA quota system, constitutes arbitrary and capricious agency action in violation of 5 U.S.C. § 706(2)(A).

(Kirk Answer ¶¶ 65, 73, 76); (LVT Answer ¶¶ 62, 77, 80.)

## II.  DISCUSSION

The United States asserts in its Motion that, regardless of whether the defendant property was wrongfully seized, the counterclaims must be dismissed.  In support of that contention, the Government advances three main arguments: (1) a third-party claimant may not assert <u>in personam</u> counterclaims in an <u>in rem</u> proceeding, (2) the requests for damages are deficient because those counterclaims are not "compulsory" within the meaning of Federal Rule of Civil Procedure 13 and Claimants did not file "notices of claim" as required by 28 U.S.C. § 2675(a), and (3) the counterclaims for declaratory relief pursuant to the APA are not ripe, and are barred because the Claimants have an adequate means of achieving the relief sought through the underlying forfeiture proceeding and because their counterclaims, when viewed in their entirety, seek damages against the United States.

In opposition to the United States' Motion, Claimants point out that there is no directly-applicable statute or case law regarding whether a third-party claimant may assert <u>in personam</u> counterclaims in an <u>in rem</u> action, and urge the court to rule that such counterclaims may be pursued when they arise from the same facts are those that gave rise to the underlying forfeiture proceeding.  Furthermore, Claimants argue that their counterclaims for damages are compulsory within the meaning of Federal Rule of Civil Procedure 13, and are thus excused from the "notice of claim" requirement contained in 28 U.S.C. § 2675(a).  Finally, Claimants assert that their

6

APA counterclaims are not barred because only the counterclaims based on the FTCA seek damages.

Due to the virtually identical factual and legal questions posed by the two <u>in rem</u> forfeiture actions, the proceedings will be consolidated and the Motions to Dismiss Counterclaims decided together. While the court notes the unsettled nature of the law regarding whether <u>in personam</u> counterclaims of the type at issue here can be asserted in an <u>in rem</u> civil forfeiture proceeding, it finds it unnecessary to rule on that point. Similarly, the question of whether the damages counterclaims are "compulsory" within the meaning of Federal Rule of Civil Procedure 13 (and thus whether Claimants were required to file a "notice of claim" pursuant to 28 U.S.C. § 2675(a) prior to filing their counterclaims) need not be decided. Claimants' petitions for damages resulting from the alleged wrongful seizure of their property are explicitly barred by the CAFRA, 28 U.S.C. § 2465(b)(2)(A). Therefore, those counterclaims will be dismissed. Claimants' requests for declaratory relief pursuant to the APA and attorneys' fees will also be dismissed, as the underlying forfeiture proceeding provides an adequate means of addressing those claims.

**A. Consolidation**

Federal Rule of Civil Procedure 42(a) grants trial courts broad discretion to "streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues" by consolidating related cases. <u>In re TMI Litig.</u>, 193 F.3d 613, 724 (3d Cir. 1999). The rule states that a court may consolidate such cases or "issue any other orders to avoid unnecessary cost or delay" if the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a).

While consolidation provides "convenience and economy of administration" by allowing related suits to be heard together, it "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Id. (quoting Johnson v. Manhattan Ry. Co., 289 U.S. 479, 497 (1933)). Thus, an order consolidating related cases has no bearing on the substantive questions of law and fact underlying those actions.

The common questions of law and fact at issue in the two proceedings clearly warrant consolidating these actions. The United States makes identical allegations in its in rem Complaints against both sets of defendant property, and the Claimants' Answers assert the same defenses and counterclaims. Additionally, the United States' Motions to Dismiss Counterclaims are premised on the same legal arguments in each case, and the briefs submitted by Claimants in opposition to those Motions are similar in virtually all respects. Therefore, the cases will be consolidated.

**B. Damages Counterclaims**

Claimants allege in their Answers that "[a]s a direct and proximate result of the DEA's wrongful seizure of the Defendant Property, [Claimants] have sustained damages, monetary and otherwise, and are entitled to an award of damages to be determined against the United States pursuant to 28 U.S.C. § 2680(c)." (Kirk Answer ¶ 65); (LVT Answer ¶ 62.) That statute provides that the United States shall be immune from:

> Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except … any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense; (2) the interest of the claimant was not forfeited;

> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c).

Thus, the United States is not immune from suits arising out of the seizure of property when the property was seized pursuant to federal law, the claimant actively asserted an unmitigated claim to that property, and the claimant was not convicted of a crime which would justify the forfeiture.

Those circumstances are present in this case. The defendant property was seized pursuant to the CMEA, a federal statute that provides for the seizure of property in cases where the owner of that property has not been convicted of a criminal offense. See 21 U.S.C. § 881(a). The United States does not allege that the Claimants have forfeited their claims, or that those claims were mitigated or remitted in any way. Indeed, the very controversy before the court demonstrates that the Claimants have taken all possible steps to assert their claims to the defendant property. Finally, the Claimants have not been convicted of any underlying criminal offense that would justify forfeiture. Therefore, the United States is not immune from suit based on the seizure of the defendant property.

The fact that the United States is not immune from suits based on the seizure of the defendant property does not, however, mean that damages may be granted if the Claimants prevail. The section of the CAFRA which enumerates the forms of relief available to a claimant in a civil forfeiture proceeding states that "The United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection." 28 U.S.C. § 2465(b)(2)(A). The remainder of the subsection allows a claimant who prevails in a civil forfeiture action against the United States to recover

(1) reasonable attorneys' fees and litigation costs, (2) post-judgment interest, and (3) actual and imputed interest earned by seized currency while in the possession of the United States. 28 U.S.C. § 2465(b)(1). It does not provide for damages. Id. Thus, an award of damages against the United States in a civil forfeiture action is prohibited, and the Claimants' counterclaims seeking that relief must be dismissed.

### C. APA Counterclaims

Claimants' counterclaims for declaratory relief pursuant to the APA must also be dismissed. Agency actions are reviewable only if they are "made reviewable by statute" or if "there is no other adequate remedy in a court." 5 U.S.C. § 704. Such a remedy exists in this case.

As defenses to forfeiture, Claimants assert that (1) the defendant property was not subject to forfeiture pursuant to 21 U.S.C. § 881, (2) they are "innocent owners" within the meaning of 18 U.S.C. 983(d), and (3) the United States acted in an arbitrary and capricious manner by failing to establish and implement ephedrine production quotas within the deadlines mandated by federal regulations. (Kirk Answer ¶¶ 22, 25, 26); (LVT Answer ¶¶ 22, 25, 26.) Given the fact that ephedrine is specifically subjected to forfeiture by 21 U.S.C. §§ 826 and 881(a), the only way Claimants could prevail on the first defense would be to demonstrate that the government did not meet its statutory obligations to promulgate ephedrine quotas within the deadlines specified in 21 C.F.R. §§ 1315.11 and 1315.21. In order to prevail on their "innocent owner" defense, Claimants must show by a preponderance of the evidence that they "did not know of the conduct giving rise to the forfeiture," and upon learning of that conduct, "did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C.

§ 983(d). Claimants do not allege that they were unaware that ephedrine was subject to regulation. In fact, they state that they applied for individual production quotas, but the DEA did not respond to their requests. (Kirk Answer ¶ 11); (LVT Answer ¶ 12.) That allegation makes it clear that, rather than being premised on a lack of knowledge that ephedrine was a regulated substance, Claimants' "innocent owner" defense is based on their assertion that the DEA failed to comply with the deadlines for promulgating ephedrine quotas mandated by 21 C.F.R. §§ 1315.11 and 1315.21. Thus, Claimants' defenses allege essentially the same thing – that the United States acted in an arbitrary and capricious manner by seizing the defendant property after failing to meet the deadline for mandating quotas.

Since Claimants' defenses to forfeiture require them to prove that the United States acted in an arbitrary and capricious manner, they must necessarily achieve declaratory relief in order to recover the defendant property. Thus, their counterclaims for declaratory relief pursuant to the APA can be achieved through the underlying forfeiture proceeding, and are superfluous. Therefore, those counterclaims will be dismissed. See Turner v. Sec'y of U.S. Dep't Hous. & Urban Development, 449 F.3d 536, 540-41 (3d Cir. 2006) (dismissing APA counterclaims because the Fair Housing Act provided an adequate remedy for those claims which could have been asserted in the underlying proceeding).

### D. Attorneys' Fees Counterclaims

Similarly, Claimants' counterclaims requesting attorneys' fees and litigation costs must be dismissed. The CAFRA provides that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for … reasonable attorney fees and other litigation costs." 28 U.S.C. § 2465(b)(1). Thus, while Claimants may eventually be entitled to remuneration for their expenses in contesting the

seizure, their right to that payment will not arise until after they have prevailed on the merits. The counterclaims for attorneys' fees and litigation costs will therefore be dismissed. In the event that Claimants prevail in the underlying forfeiture proceeding, those requests may be properly asserted by post-judgment motion.

### III.  CONCLUSION

For all the foregoing reasons, the cases are consolidated and the United States' Motion to Dismiss Counterclaims is granted.

The court will enter an order implementing this opinion.


*s/Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: December 29, 2008